E-FILED
Monday, 19 December, 2022  10:38:55 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

SHANNON CARNAHAN,

                Plaintiff,

v.

MCLEAN COUNTY SHERRIF'S
OFFICE,

                Defendant.

Case No.: 21-cv-1125

Honorable Michael M Mihm

**PLAINITFF'S MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Shannon Carnahan ("Carnahan" or "Plaintiff") by and through her attorneys, Joshua N

Karmel from the Law Offices of Joshua N Karmel submits the following Memorandum in

Support of his Response to Defendant, McLean County Sheriff's Department ("Mclean

County" or "Defendant") Motion for Summary Judgment.

I.      **INTRODUCTION**

1. Shannon Carnahan was employed with the Defendant as a correctional officer for the Mclean
County Sheriff's for over twenty years. *Compl.  at* ¶ 7

During his tenure with the county, he performed his job with the utmost professionalism.
Unfortunately, the job took a toll on his health so he took a leave of absence on or about January
16, 2019 (*See, e.g., Plaintiff's Statement of Material Facts* ("PSOF") ¶ 3 ). During his absence,

PART I

he was under the care of doctors at OSF. However, from the period of March 6, 2019 to June 6, 2019 the care at OSF was often perfunctory as the treating physicians would discharge the Plaintiff while he remained in an anxious state. See attached Exhs. *D-G*,

The number of times the Plaintiff attempted to return to work is reflected in Exhibits D through G. Despite the releases to return to work, it was later learned that the Plaintiff was never prescribed the right medication until he was seen and treated by Dr. Raju Paturi.

In a letter dated June 19, 2019 to the Defendant, Dr. Paturi stated that he changed the medication that would allow the Plaintiff to return to work. *See attached Exh. I*

Despite the assurance from Dr Paturi, the Plaintiff was terminated by the county for job abandonment on June 25, 2019. ("PSOF" ¶ 9)

Ultimately, Plaintiff learned after he was terminated that similarly-situated correctional officers were notified by the Defendant that their leave time was going to expire and they would face termination if they did not return. *See attached Exh. J-L*

Plaintiff claims he was never notified that his leave was going to end until after the fact; and that was when he was notified by letter that he was terminated. ("PSOF" ¶ 9)

## II.    PLAINTIFF'S STATEMENT OF MATERIAL FACTS

2. Plaintiff worked as a correctional officer for over 20 years with the Mclean County Sheriff when he started experiencing stress and anxiety. *Exh. H . at ¶ 7*

3. On or about March 2018, he began therapy and requested his Family Medical Leave *Exh. H . at ¶ 8*

4. On or about January 16, 2019 he took another leave of absence for stress as symptoms intensified. *Exh. H . at ¶ 9*

5. Before his return to work he was recommended by his doctor to develop techniques to mitigate his medical condition. *Exh. H at ¶ 10*

6. During his leave he complied with all the requirements of the leave by notifying his employer of any changes and checking with his employer on a monthly basis. *Exh. H at ¶ 14*

7. During his absence he expressed his willing to return to work and hoped his return would be soon. Each time he was unable to return due to his medical condition. *Exh.H . at ¶ 17; Exhs. D-G*

8. On or about June 26, 2019, Plaintiff contacted Desk Seargent Thomas McCormick to let him know that he that he planned on returning to work on June 27, 2019. *Exh. H. at ¶ 18*

9. McCormick advised the Plaintiff to bring in a note releasing him to return to work without restriction. *Exh. H . at ¶ 19*

10. That same day he was told by Chief Deputy Jamey Kessinger that as of June 17 his time off was exhausted and he was terminated by the Defendant *Exh. H at ¶ 20-21; Def Exh W*

11. Plaintiff learned from Union Representative David Nixon that Kessinger did not deem Plaintiff fit to return despite his release to return to work full duty *Exh. H at ¶ 22;*

12. Plaintiff was never informed by Defendant that his available time was about to expire. *Exh. H at ¶ 23*

13. Similarly situated employees including Robert Gary Underwood, Sherri Day and Raymond Loftus were directly notified by the Defendant that their FMLA time was about to expire and that they would be terminated if they did not return to work *Compl. at ¶ 26-27; Aff. of Underwood, Aff. of Loftus, Aff of Sherri Day*

14. Sherri Day claims that when she took sick time, she was told by Sgt Pacha that the

15. Letters from Assistant Superintendent Diane Hughes dates March 22, 2019 and by Sheriff Jon Sandage show the discrepancy between expiration date of the FMLA time. *Exh. H at ¶ 28*

16. The discrepancy in qualifying FMLA and sick time is also on display in Plaintiff's employee attendance record for 2019, wherein sick time was noted from January 16 until March 14, 2019 (however March sick time was not counted into the absence summary but instead was counted as FMLA time) while the FMLA leave was continued to June 7, 2019. *Compl. at ¶ 29; Exh.*

17. Similarly situated employees were contacted by Defendant to inquire whether they needed assistance or to simply ask how they were feeling. e.g., Correctional Officer Chris Gibson called multiple times by Diane Hughes, Matthew Proctor and John Sandage to see how he was feeling after being off work due to COVID-19. *Exh. H   at ¶ 30.*

18. Plaintiff was never contacted by Defendant inquiring about his status and whether he needed assistance. *Exh. H . at ¶ 31*

19. Plaintiff testified that he was treated differently than similarly situated correctional officers because he was never notified by the defendant either by a letter or phone call that his leave of absence was going to expire. *Exh A, Pg.15, lines 15-20*

20. Plaintiff testified that he was told by Jamie Kessinger that he was unfit to work and that he was also told by Fraternal Order of Police FOP representative, Dave Nixon, to file a disability claim. *Exh A, Pg.16, line 12*

21. Plaintiff testified that he was told by Jamie Kessinger to fill out disability paperwork. *Exh A, Pg.18, lines 2-16*

22. Plaintiff testified that he was told by Dave Nixon that Jamie Kessinger believed he was not fit to return to work. *Exh A, Pg.19, line 22-24*

23. Plaintiff testified that he spoke to Larry Dixon from the Illinois Municipal Retirement Fund ("IMRF"). According to Plaintiff, Dixon said that there were a lot of "red flags" *with* the application. He asked Plaintiff whether the individuals who suggested that he file for disability were IMRF consultants of doctors.  Plaintiff testified that Dixon thought that the County was trying to get him "off the books and on to ours" *Exh A, Pg.20-21, line 12-24, 1-14.*

24. Plaintiff testified that the he spoke with a fellow correctional officer, Trent Arbuckle, who was facing a suspension. According to the Plaintiff, Sheriff Sandage dropped the suspension because Arbuckle's son tragically died.  Plaintiff testified that Arbuckle shared this information with him. *Exh A, Pg.27-28, lines 18-24, lines 1-8*

25. Plaintiff testified that he took leave in 2018 to deal with his stress and anxiety, he testified that he felt unsafe. *Exh A, Pgs.68-69, lines 20-24*

26. Plaintiff testified that he notified Kessinger that he had stress and anxiety and needed to step away. Plaintiff testified that Kessinger told him that *"Well Shannon you bring all of this on yourself. You are one of the top three complainers." Exh A, Pg.71, lines 11-22.*

27. Plaintiff testified that he was aware of correctional officer Erica Mattingly who was out for over a year for a back injury but was not terminated. *Exh A, Pg.86, lines 1-13*

28. Plaintiff testified that many of the sergeants would often tell him that he was overreacting about his stress and anxiety. He testified that he was known as a complainer. *Exh A, Pg.91, line 9-14*

29. Plaintiff testified about a letter he received from Diane Hughes concerning his FMLA usage in 2018 and 2019. He testified that after he received the letter, he called Diane Hughes for further discussion. He testified that she told him she was too busy to discuss the letter. She would get to it if she had time. *Exh. A, Pg.113, lines 11-22.*

30. Plaintiff testified that when his FMLA expired nobody from the Sheriff's office called his to provide a return date which they did for other correctional officers. *Exh A, Pg.135, lines 5-8*

31. Plaintiff testified that he spoke to Sergeant Rod Frank when he was at the hospital emergency room. He told Sgt. Frank that he was contemplating his return to work. Sgt. Frank responded by telling Plaintiff to *"get your shit together." Exh A, Pg.136, lines 4-14*

32. Plaintiff testified that he spoke to his superior Thomas McCormick about getting cleared to work on June 27, 2019. During that call there was no indication that it was determined that he would be would later learn from Chief Deputy Janie Kessinger that he was terminated on June 17, 2019. *Exh A, Pg.143-144, lines 12-24,1-6*

33. Plaintiff testified that he could have taken unpaid leave after his time expired, however, no one made him aware of that option. *Exh A, Pg.150-151, lines 23-24,1-5*

34. Plaintiff testified that he was released to return to work full duty on June 2019. *Exh A, Pg.151, lines 1-5*

35. Plaintiff testified that he finally was taking the right medication, Sentraline, that allowed him to return to work full duty. *Exh A, Pg.174, lines 1-14*

36. Diane Hughes testified when asked whether she believed Plaintiff was fit for duty upon his return, she only relied on what was stated in the doctor's note *Exh B, Pg.36, line 7*

37. Diane Hughes testified that she could not recall whether she ever called an employee to let them know their FMLA time was about to expire. *Exh B, Pg.38-39, lines 8-24,1-2*

38. Diane Hughes testified that she participated in the unemployment hearing for Shannon Carnahan but was unable to answer why the IDES determined that the Plaintiff was found to have voluntarily quit when he was actually terminated for job abandonment. *Exh B, Pg.40-42, lines 21-24,1-24,1-24.*

39. Diane Hughes testified about a May 6, 2019 email where she told Sergeants Schroeder and McCormick not to place the Plaintiff on the schedule despite the Plaintiff's intentions to return to work full duty. *Exh B, Pg.45, lines 5-24.*

40. Diane Hughes testified to an email dated May 9, 2019 that she sent to Sergeant Ovid directing him to shadow the Plaintiff and to not allow him to carry a weapon. *Exh B, Pg.52-54, lines 15-24,1-24,1-17.*

41. Diane Hughes testified about a former Mclean County Correctional Officer, Sherri Day who was off on sick time but did not have to fill out paperwork. She had no explanation why she did not have to fill out paperwork. *Exh B, Pg.57-59,*

42. Diane Hughes testified about a sworn statement from former Correctional Officer. Underwood stated that he would get calls from Kessinger or one of the sergeants reminding him that his sick time was about to expire. Hughes does not recall speaking with Underwood about his sick time. *Exh B, Pg.59-61, lines 14-24,1-24,1-4*

43. Deputy Sheriff Jamey Kessinger testified that in his position one of his job duties was to investigate discrimination claims. *Exh C, Pg.13, lines 3-24*

44. Deputy Chief Kessinger testified about the employment handbook. In the handbook is an anti-discrimination policy which he is familiar with. *Exh C, Pg.23-24, lines 5-24,1-24*

45. Kessinger testified that he is familiar with the Americans with Disabilities Act ("ADA") *Exh C, Pg.25-26, lines 7-24,1-12*

46. Kessinger testified that his deposition was the first time that he saw the Complaint. *Exh C, Pg.30-31, lines 7-12*

47. Kessinger testified that there is no call-in policy when someone is on sick. He would give unwritten directives for employees out sick call in. He further testified that the call-in rules are applied on an individual basis. *Exh C, Pg.35, lines 1-11*

48. Kessinger testified that on June 25th 2019 Carnahan was terminated but Kessinger couldn't terminate him without the Sheriffs permission. He went on to testify that Carnahan wasn't terminated for two weeks after he ran out of time. *Exh C, Pg.39, lines 1-8*

49. Kessinger testified that he denies the allegations in the complaint that he did not believe that Plaintiff was not fit for the position. *Exh C, Pg.39, lines 9-17*

50. Kessinger testified that he thought that he personally called Plaintiff to tell him his time was about to expire. But he testified that he could not remember. He also testified that he could not swear to it but believes that he may have called the Plaintiff. *Exh C, Pg.40, lines 9-23*

51. Kessinger testified that he agreed it was an important call to make to the Plaintiff despite the fact that he has no record of the call. *Exh C, Pg.41, lines 1-10*

52. Kessinger testified that he knew former correctional officer Robert Gary Underwood. Underwood wrote a sworn statement stating that Kessinger called him to let him know that his was about to expire and that he should return so he wouldn't get terminated. Kessinger agreed with the statement. *Exh C, Pg.43-44, lines 11-24,1-16*

53. Kessinger testified about former employee Raymond Loftus who wrote a sworn statement where he stated that he was off on a work injury and was   who hurt his neck and was off work. On August 8, 2019 he received a letter indicating that his leave time expired on July

24th (over two weeks later). According to Kessinger he is still with the County. *Exh C, Pg.48, lines 1-15*

54. Kessinger testified that it was his understanding that the Illinois Department of Employment Security ("IDES") denied Plaintiff's unemployment because he voluntarily quit but was also testified that Sheriff Jon Sandage sent the Plaintiff a letter indicating that his employment was terminated. *Exh C, Pg 51-53*

55. Kessinger testified that Carnahan was supposed to turn in his resignation letter, but when he didn't Kessinger switched the resignation to a termination. *Exh C, Pg. 53, lines 12-24*

56. Kessinger testified about the job classification for a correctional officer. The classification states that you need to free from mental disorders. Kesinger agrees that you must be free from mental disorders. *Exh C, Pg 59-60, lines 4-13*

57. Kessinger testified about what it means to be released to work full duty. He testified that it means that an individual can conduct all of his duties and would be fully responsible for all his duties. *Exh C Pg. 62, lines 1-7*

58. Kessinger testified to the May 6, 2019 e-mail from Diane Hughes that states that they should not put the Plaintiff on the schedule despite a full duty release. Kessinger testified that the length of time the Plaintiff was off would require him to be shadowed. *Exh C Pg. 66, lines 9-24*

59. Kessinger testified that nowhere is it written that a correctional officer that has been on extended leave needs to be shadowed when they return to work. *Exh C Pg. 69, lines 9-15*

60. Kessinger testified that he denied ever stating that he would like to get three to five years from a correctional officer and the rest is "icing on the cake." However, he does state that the comment may have been misconstrued. *Exh C Pgs. 69-70, lines 18-6*

III                          **ARGUMENT**

**DEFENDANT VIOLATED THE PLAINTIFF'S RIGHTS UNDER THE AMERICANS WITH DISABILITES ACT ("ADA") AND THERFORE SUMMARY JUDGEMENT IS INAPPROPRIATE IN THIS MATTER**

a) **Legal Standard**

Rule 56 provides that the Court "shall grant summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).* A genuine dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).* The substantive law controls which facts are material. *Id.* After a "properly supported motion for summary judgement is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment *Skiba v. Illinois Cent. R.R. Co., 884 F.3d 708, 717 (7th Cir. 2018)* . The Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in his favor." *White v. City of Chicago, 829 F.3d 837, 841 (7th Cir. 2016)* .

b) **Discussion**

Defendant argues that Plaintiff has failed to provide sufficient evidence to support a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12102 et seq. The Defendant asserts that in order to survive a motion for summary judgment under Title VII, the Plaintiff must present evidence to show that he was discriminated against because of his disability. *Def. Memo. in Support of Def. Mot. for Sum. Judg., Exh M*

Defendant argues that Plaintiff is not a qualified individual with a disability. *Id. at 18.* In addition, the Defendant argues that Plaintiff cannot show that Defendant failed to accommodate