UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| SHANNON CARNAHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 21-cv-1125 |
| | ) | |
| MCLEAN COUNTY SHERIFF'S OFFICE, | ) ) | |
| | ) | |
| Defendant. | ) | |

### ORDER AND OPINION

This matter is now before the Court on Defendant McLean County Sheriff's Office's ("Defendant" or "MCSO") Motion for Summary Judgment. (D. 25[1]). For the reasons stated herein, Defendant's Motion is GRANTED.

### JURISDICTION

This Court has jurisdiction over this matter under 28 U.S.C. § 1331, as the claim asserted in the Complaint presents a federal question under The Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, (the "ADA"). Venue in this Court is appropriate under 28 U.S.C. § 1391(b)(2), as the events giving rise to the claim occurred in Bloomington, Illinois.

### BACKGROUND

Plaintiff, Shannon Carnahan, worked for MCSO as a correctional officer in the jail from September 1998, until his employment was terminated on June 25, 2019. Correctional officers' duties include guarding inmates to prevent disturbances and escapes, searching cells for contraband, and directing inmates during assignments. The position requires direct contact with inmates to maintain safety and security at the jail.

---

[1] Citations to the docket are abbreviated as (D. ___).

1

MCSO's correctional officers are members of the Illinois Fraternal Order of Police, and the terms of their employment are covered by a Collective Bargaining Agreement ("CBA") between MCSO and the union. Pursuant to the CBA, the MCSO adheres to the Family Medical Leave Act ("FMLA") and the ADA, which permit individuals who have medical restrictions that qualify for FMLA leave to take such leave when needed. Once an employee has exhausted all sick leave benefit time, the CBA requires them to request an unpaid leave of absence within five days of exhausting that time.

Correctional officers' work hours are divided into three shifts. Each shift is eight hours long for five consecutive days, followed by two days off. However, due to safety and security concerns, correctional officers are required to be able to work all shifts. MCSO also requires minimum staffing levels be maintained during all shifts at the jail. Therefore, if a correctional officer is unable to work their shift, other officers must cover that shift to ensure the minimum staffing requirements are met.

Through 2018 Carnahan worked primarily first shift (7:00 a.m. – 3:00 p.m.). In early 2018, Carnahan was involved in an incident with an inmate at the jail, which he felt was caused by another correctional officer. Carnahan then began experiencing increased panic and anxiety around the inmates. In March 2018, with MCSO's approval, Carnahan took FMLA leave to address these issues. While on leave he was diagnosed with adjustment disorder with mixed anxiety and depressed mood, adjustment insomnia, and panic disorder.

Carnahan returned to work in 2018 and submitted a bid to be switched to third shift (11:00 p.m. – 7:00 a.m.), which he believed would have less inmate involvement and be better for his health. It is unclear when exactly Carnahan transferred to third shift, but it appears to have been in early 2019. At or around the time he transferred to third shift, he started to experience increased

panic, anxiety, and insomnia. As a result, he took a second FMLA leave starting on January 16, 2019.

On March 6, 2019, Carnahan called Diane Hughes, MCSO's assistant jail superintendent, to confirm the number of FMLA hours he had used in 2018 and 2019. Hughes emailed him later that day informing him he had used 168 FMLA hours in 2018 and 224 hours between January 16, 2019, and March 6, 2019. (D. 25-7). On March 13, 2019, Carnahan provided MCSO with a medical release stating he was able to return to work full duty without restrictions, and he was scheduled to return to work on March 18, 2019. On March 18, 2019, Carnahan emailed Jamey Kessinger, MCSO's jail superintendent, saying he was not ready to return due to his anxiety being too much and asked to be taken off the schedule for the rest of the week. (D. 25-8). On March 19, 2019, Carnahan told Kessinger that his doctor changed his medication and he planned to return on Wednesday when his FMLA time expired. (D. 25-9).

On March 22, 2019, Hughes sent Carnahan a letter notifying him that his twelve weeks of FMLA leave time was exhausted. (D. 25-10). On March 25, 2019, Carnahan gave MCSO another medical release which again stated he may return to work full duty without restrictions on March 27, 2019. (D. 25-11). Carnahan also provided MCSO with a letter from his counselor stating he could return to work full duty without restrictions on March 27, 2019. (D. 25-12). Despite being medically released, Carnahan did not return to work due to his medical condition.

This pattern continued over the next three months. Between mid-March and late-June of 2019, Carnahan provided MCSO with approximately ten letters from his medical providers which stated he was released to return to work full duty, without restrictions. (D. 25-11; D. 25-12; D. 25-13; D. 25-17; D. 25-18; D. 25-19; D. 25-20; D. 25-21; D. 25-22; D. 25-23). Carnahan's medical providers specifically stated in their releases dated June 4, 2019, and June 17, 2019, that his

3

medication would not affect his work. (D. 25-22; D. 25-23). After submitting each release, Carnahan would inform MCSO prior to his scheduled shift that he could not return to work because of his medical condition. During this time, Carnahan continued to be paid, using his accrued sick leave benefit time.

Finally, on June 26, 2019, Carnahan contacted jail sergeant Thomas McCormick to inform him he would return to work on June 27, 2019. After speaking with McCormick, Kessinger called Carnahan and informed him that his leave benefit time had expired on June 17, 2019, and that he had been terminated for job abandonment in a letter from the Sheriff on June 25, 2017. (D. 25-24). Carnahan's union representative then contacted MCSO and requested they allow him to submit a voluntary resignation, and have his termination converted to a resignation. MCSO agreed. On July 2, 2019, Carnahan submitted a letter to the Sheriff, which stated "Due to continuing health issues I am no longer able to continue my employment as a correctional officer." (D. 25-25). Carnahan did not appeal or otherwise dispute his dismissal as permitted under the CBA.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In seeking a grant of summary judgment, the moving party must identify specific evidence that shows there is no genuine issue of material fact or "that an adverse party cannot produce admissible evidence to support a fact." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)-(2). Once this burden is met, the nonmoving party cannot simply rest on the allegations of the pleadings but must cite to evidence in the record that shows there is a genuine issue for trial. *See id.*

A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the court must construe all facts and reasonable inferences in favor of the nonmoving party. *Id.* at 255. Carnahan's response in opposition, however, did not bother to respond to MCSO's "Statement of Undisputed Material Facts." *See* C.D. Ill. L.R. 7.1(D)(2)(b)(1)-(4). Thus, we depart from our usual deference towards to the non-moving party and accept MSCO's supported, unopposed material facts as true. *See* L.R. 7.1(D)(2)(b)(6). *See also Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion.").

Carnahan's response brief did include his own "Statement of Material Facts" in paragraphs 2-60. (D. 29, pp. 2-4). However, Carnahan again failed to comply with Fed. R. Civ. P. 56(c) and Local Rule 7.1(D)(2)(b). Specifically, paragraphs 2, 3, 4, 5, 6, 8, 9, 11, 12, 15, 16, 17, and 18, are supported only by references to the allegations in the Complaint. (D. 29, pp. 2-4). Paragraph 14 is not a complete sentence and contains no supporting citation. *Id.* at p. 3. Paragraphs 11, 22, 23, and 24 are hearsay statements, supported only by Carnahan's own testimony. *Id.* at pp. 3-4. Finally, numerous other assertions either misrepresent the evidence, or rely on evidence that fails to support the proposition. (D. 29, pp. 3-4, ¶¶ 13, 20, 29, 30, 41, 42, 56). Because Carnahan bears the burden of proof at trial and MCSO has put forth evidence showing that there is no genuine dispute for trial, he must affirmatively demonstrate that a genuine issue of material fact exists. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923-24 (7th Cir. 1994). This Court will not scour the record in

search of evidence to defeat a motion for summary judgment. *See id.*; *see also* Fed. R. Civ. P. 56(c)(3).

## DISCUSSION

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prove a violation of this provision, a plaintiff must show he is (1) disabled; (2) otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability. *Roberts v. City of Chi.*, 817 F.3d 561, 565 (7th Cir. 2016); *Tonyan v. Dunham's Athleisure Corp.*, 966 F.3d 681, 687 (7th Cir. 2020).

MCSO seeks summary judgment on Carnahan's claims asserting: (1) he has failed to establish he was qualified to perform the essential functions of a correctional officer, with or without accommodation; or (2) that similarly situated employees were not treated differently. (D. 25). Carnahan responds that he suffered from job related stress that is covered by the ADA, that MCSO regarded him as having a disability under the ADA, and that similarly situated employees given "preferential treatment because they did not have a defined disability." (D. 29-1).

### A. Qualified individual with a disability under the ADA

MCSO does not dispute whether Carnahan was "disabled" under ADA, only that he was not a "qualified individual with a disability" under the ADA. Carnahan's response does not address this argument. Instead, he argues that he was disabled under the ADA and that he was regarded by MCSO as being disabled. (D. 29-1, pp. 1-4). As a result, this Court finds Carnahan has waived argument on whether he was a "qualified individual with a disability" under the ADA.

Assuming, arguendo, he had not, this Court still finds Carnahan cannot establish a claim under the ADA. The ADA prohibits employers from discriminating against any "qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). "Qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The Seventh Circuit has stated:

> In determining whether a person is a qualified individual, we apply a two-step process. First, we determine whether the person satisfies the prerequisites for the position, such as possessing the proper educational background, employment experience, skills, or licenses. We then consider "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation."

*Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 417 (7th Cir. 2016), quoting *Stern v. St. Anthony's Health Center*, 788 F.3d 276, 285 (7th Cir. 2015) (additional citation omitted). In other words, Carnahan must prove he is a "qualified individual" by producing sufficient evidence from which a jury could conclude that he could perform the essential functions of his job with or without reasonable accommodation. *See Wheatley*, 826 F.3d at 418.

From January 16, 2019, through June 26, 2019, Carnahan concedes that he was unable to work. It is also undisputed that an essential function of his job as a correctional officer is regular, physical attendance. The Seventh Circuit has held, "if one is not able to work, one cannot be a qualified individual" and that the "[i]nability to work for a multi-month period removes a person from the class protected by the ADA." *Bryne v. Avon Products, Inc.*, 328 F.3d 379, 381 (7th Cir. 2003). Based on the foregoing, Carnahan cannot establish he was a "qualified individual with a disability" under the ADA. Carnahan also has not provided any reasonable accommodations that MCSO could have offered that would have allowed him to perform the essential functions of his

job. Namely, coming into work during his scheduled shifts. The Seventh Circuit has made clear, an indefinite, extended leave from work is not an accommodation contemplated by the ADA. *Id.*

### B. Similarly situated employees treated more favorably.

Because Carnahan is not a "qualified individual with a disability" under the ADA, we need not determine whether similarly situated employees without a disability were treated more favorably. However, even if that analysis was appropriate, Carnahan's claim still fails. Carnahan argues MCSO treated other employees more favorably by warning them that their *leave time* was about to expire so they could return to work without risking termination. In support, he provides three affidavits from other MCSO employees which state MCSO notified them when their *FMLA leave time* expired and that they needed to return to work. (D. 28-16; D. 28-17; D. 28-18) (emphasis added).

First, no information is included as to whether these individuals were taking leave due to a disability or other circumstances surrounding their leave. *Id.* Second, the record shows MCSO similarly notified Carnahan when he had exhausted his *FMLA leave time* on March 22, 2019. (D. 25-10). Furthermore, on March 19, 2019, Carnahan sent an email to Kessinger acknowledging his FMLA leave time expired the following Wednesday. (D. 25-9). The fact the Sheriff's termination letter on June 25, 2019, mistakenly states his FMLA leave time expired in June 2019, instead of his accrued sick leave benefit time does not create a question of fact that would defeat summary judgment. All other evidence shows that MCSO notified Carnahan, and that Carnahan was otherwise aware, that his FMLA leave time expired in March 2019.

To the extent Carnahan is arguing MCSO terminated him without notification after he had used all his additional sick leave benefit time, this is immaterial. As stated above, Carnahan was unable to return to work when both his sick leave benefit time expired on June 17, 2019, and when

the Sheriff terminated his employment for job abandonment on June 25, 2017. Carnahan also has not presented any other similarly situated employees without a disability who engaged in similar conduct and were treated more favorably. Accordingly, summary judgment in favor of MCSO is appropriate.

## CONCLUSION

In sum, Carnahan was not able to perform the essential functions of a correctional officer in MCSO's jail between January 16, 2019, and his termination on June 25, 2019. Furthermore, an extended leave of absence is not reasonable accommodation contemplated by the ADA. While Carnahan suggests that he could have returned to work without restrictions on June 27, 2019, this is purely speculative and not supported by any evidence in the record. Against this backdrop, the Court finds Carnahan has failed to establish a viable ADA claim.

For the reasons stated above, Defendant McLean County Sheriff's Office's [25] Motion for Summary Judgment is GRANTED. The Clerk is DIRECTED to enter judgment in favor of Defendant and against Plaintiff. The case is now TERMINATED. The Clerk is DIRECTED to close this case.

ENTERED this 12th day of April, 2023.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge